IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YOLANDA DAVIS,<br><br>              Plaintiff,<br>v.<br><br>TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>              Defendants. | Civil Action Complaint 24-5759<br>Jury Trial Demanded |

## CIVIL ACTION

Plaintiff, Yolanda Davis by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA ("Trustees" or "Defendant")and avers the following:

## PARTIES

1.     Plaintiff, Yolanda Davis ("Ms. Davis" or "Plaintiff") is an adult individual who resides in the Commonwealth of Pennsylvania and at all times relevant to this civil action was employed within the Eastern District of Pennsylvania where the facts that gave rise to Plaintiff's claims occurred.

2.     Defendant, Trustees of the University of Pennsylvania is business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania, City of Philadelphia.

3.     The following individuals were identified as Defendants in Plaintiff's Charge of Discrimination filed this the Equal Employment Opportunity Commission ("EEOC"), however, Plaintiff's claims under the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO") are not yet ripe for suit.

      a. YANI SHAFI (INDIVIDUALLY).

      b. WYKIETH MONK (INDIVIDUALLY).

      c. FRED KASHOW (INDIVIDUALLY).

      d. WENDY SPARKS (INDIVIDUALLY).

      e. GLEN ZEITZER (INDIVIDUALLY)

4. At all times relevant to this civil action, Plaintiff was an employee of Trustees of the University of Pennsylvania and was subjected to disparate treatment, retaliation and a hostile work environment.

## NATURE OF THE CASE

5. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); 42 U.S.C. § 1981 and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation which ultimately led to Plaintiff's unlawful termination by her employer.

## JURISDICTION AND VENUE

6. This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981.

7. The honorable Court has supplemental jurisdiction over the Commonwealth law Causes of Action once they are filed.

8. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in Philadelphia County where the discrimination complained of occurred.

9. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

10. On July 29, 2024, the EEOC issued Plaintiff a Dismissal and Notice of Rights with respect to all four (4) Charges filed.

11. This action is commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

## MATERIAL FACTS

12. Plaintiff was unlawfully suspended from her employment by Defendants, due to her disability and race, and in retaliation for protective activity to which Plaintiff engaged when Plaintiff reported her disability and requested accommodations and invoked her rights under the Family and Medical Leave Act and the Americans with Disabilities Act.

13. Defendants terminated Plaintiff's employment thereafter as a response to her protected activity and membership in a protected class.

14. At all times material to this civil action, Plaintiff suffered from a disability under the applicable statutes.

15. Plaintiff's disability includes chronic anxiety for which Ms. Davis has treated since 2021.

16. Plaintiff, Yalonda Davis's medical condition, chronic anxiety, qualifies as a disability under the Americans with Disabilities Act because her disability substantially limits one or more major life activities including, thinking, concentrating, sleeping, and eating.

17. This is not an exhaustive list of major life activities that are substantially impacted her Plaintiff's chronic anxiety.

18. Plaintiff, Yalonda Davis is a black, African American female and member of the Muslim religion.

19. Defendant, Trustees of the University of Pennsylvania ("Defendant"), is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 255 S 38th Street #6359 Philadelphia Pennsylvania 19104.

20. Yani Shafi who was named as a Respondent in Plaintiff's Charge of Discrimination is employed by Defendants and at all times relevant to this civil action held the position of Housekeeping Director.

21. Wykieth Monk, who was named as a Respondent in Plaintiff's Charge of Discrimination is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of correspondence at 255 S 38th Street #6359 Philadelphia Pennsylvania 19104.

22. At all times relevant, Yani Shafi and Wykeith Monk held supervisor liability such that each one had the authority to subject Plaintiff to a tangible employment action.

23. Fred Kashow is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of correspondence at 255 S 38th Street #6359 Philadelphia Pennsylvania 19104.

24. Wendy Sparks is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of correspondence at 255 S 38th Street #6359 Philadelphia Pennsylvania 19104.

25. Glen Zeitzer is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of correspondence at 255 S 38th Street #6359 Philadelphia Pennsylvania 19104.

26. Defendants employ approximately 2000 employees in the building where Plaintiff worked.

27. At all times relevant, Defendants were Plaintiff's joint and sole employer.

28. Plaintiff, Yalonda Davis, began her employment for Defendants sometime around February 19, 2019.

29. Plaintiff held the position of Laundry Attendant/Custodian during her employment with Defendants.

30. Plaintiff's direct supervisor's name was Yani Shafi.

31. Sometime around January 2023, Yani Shafi subjected Plaintiff to disparaging comments and conduct based upon Plaintiff's race.

32. Yani Shafi is a Hispanic, adult female.

33. Yani Shafi singled Plaintiff out and treated her differently from the way Ms. Shafi spoke to her employees who were not members of Plaintiff's protected classes.

34. Plaintiff witnessed Yani Shafi's unlawful conduct when Yani Shafi targeted Ruthie Thomas, another black, African American employee who was also subjected to discrimination and harassment in the workplace.

35. Yani Shafi targeted Ruthie Thomas and Ruthie Thomas was forced to leave the department due to the discrimination and harassment.

36. When Yani Shafi succeeded in targeting and eliminating Ruthie Thomas's position, Yani Shafi began targeting Plaintiff, based on the same discriminatory intent.

37. Sometime around November of 2022, Yani Shafi began targeting Plaintiff, by subjecting her to insults, false writeups, and false allegations of misconduct.

38. Plaintiff's conduct, at all times, was in accordance with company policy and any and all allegations of disciplinary issues were due to Plaintiff's membership in a protected class and the discrimination from Defendants.

39. Plaintiff at all times satisfied the duties and responsible of her employment.

40. Yani Shafi made it clear to Plaintiff that she did not want any black, non-Hispanic individuals in the department.

41. Fred Katow is a Union Representative who witnessed the conduct from Yani Shafi.

42. Plaintiff attempted to reach Fred several times for help with problems she was having due to Yani Shafi's misconduct.

43. Yani Shafi and Fred Kashow maintained a close personal relationship which Yani Shafi used to further subject Plaintiff to discrimination and retaliation.

44. Yani Shafi spoke to Fred Kashow about Plaintiff and thereafter, Fred Kashow refused to perform his duties as the Chief Stewart for the Union in which Plaintiff was a member.

45. Fred Kashow used his position as a Chief Shop Steward to further subject Plaintiff to discrimination and retaliation by refusing to perform the duties and obligations that were owed to Plaintiff.

46. Fred Kashow refused to respond to calls from Plaintiff and refused to provide Plaintiff with assistance and support in filing a grievance due to Defendants violation of Plaintiff's rights.

47. Plaintiff engaged in protected activity by reporting and opposing the ongoing discrimination and harassment in the workplace and Defendants including the Fred Kashow on behalf of the union subjected Plaintiff to discrimination and retaliation.

48. Fred Kashow continued to respond to calls and requests from non-union member, Yani Shafi.

49. Fred Kashow offered to help non-union member, Yani Shafi.

50. Fred Kashow assistance Yani Shafi in subjecting Plaintiff to further discrimination and retaliation by assigning written discipline.

51. Yani Shafi exclusively used Defendant, Fred Kashow for all matters concerning the discrimination and harassment and retaliation of Plaintiff and Fred Kashow worked in coordination with Yani Shafi in order to continue the campaign of illegal conduct.

52. Accordingly Plaintiff files this Charge of Discrimination against Fred Kashow personally and will hold Fred Kashow responsible for his illegal discrimination and harassment in the workplace and for violating Plaintiff's rights under the CBA and her statutory rights.

53. Fred Kashow's conduct represents a willful and intentional departure from the law such that Plaintiff should be awarded punitive damages which Defendant Fred Kashow is obligated to pay.

54. For these reasons and due to the intentional and willful conduct of Fred Kashow, Plaintiff requests a punitive damages hearing be scheduled so that an assessment of financial position may be performed to determine the level and extent of the punitive damages that must be assessed.

55. The same hearing and assessment should be performed in connection with Yani Shafi, Wykieth Monk, Fred Kashow, Wendy Sparks, and Glen Zeitzer.

56. Fred Kashow used his position to assist and coordinate with Yani Shafi to subject Plaintiff to discrimination and racial animus.

57. Fred Kashow used his position to deceive and mislead Plaintiff and to assist Defendant, Yano Shafi.

58. Fred Kashow signed off on false allegations without discussion of agreement of Plaintiff.

59. When Plaintiff attempted to discuss her position with Fred Kashow, Fred Kashow refused to consider Plaintiff's denials.

60. Fred Kashow used his position to subject Plaintiff to adverse employment action and to deprive Plaintiff of her rights under the CBA and rights under the applicable civil rights laws.

61. Defendants did not give Yalonda Davis a chance to speak during meetings and to subject Plaintiff to false written discipline.

62. Yalonda Davis filed several grievances as a result of this misconduct.

63. All Grievances were thrown out without review.

64. As a result, Yani Shafi continued the discrimination and harassment and disparaging conduct to which Plaintiff was subjected.

65. Wendy Sparks is the Director of Housekeeping and Facilities on Campus.

66. Wendy Sparks maintains a close relationship with Yani Shafi.

67. Wendy Sparks also worked with Yani Shafi to continue the discrimination and retaliation.

68. Plaintiff engaged in protected activity by requesting help from supervisors and union representatives and reporting and opposing the discrimination and harassment in the workplace which included the false written discipline.

69. Kelly McCullough, another Union Representative, said to Plaintiff, "I do not understand why they keep letting Yani Shafi harass you".

70. Sometime in August 2023, Yani Shafi subjected Plaintiff to further illegal conduct and adverse employment action when Plaintiff was suspended for five days.

71. Sometime around September 27, 2023, Plaintiff was suspended for ten days.

72. The illegal ten-day suspension was the result of the illegal discipline.

73. Plaintiff was accused of having two writeups.

74. Defendant, Yani Shafi, subjected Plaintiff to nonstop disparaging, racist remarks, and false discipline as part of a campaign of discrimination and retaliation.

75. When Plaintiff reported the illegal discrimination to Defendant, Jim Bean, Plaintiff was subjected to retaliatory comments.

76. Jim Bean said to Plaintiff, "you are an adult."

77. Jim Bean refused to consider the reports of discrimination and retaliation submitted by Plaintiff and responded to the reports of discrimination by telling Plaintiff "control your emotions."

78. These discriminatory comments were made after Plaintiff notified Defendant, Jim Bean that Plaintiff suffered from chronic anxiety.

79. During a meeting with Defendants, that was scheduled after Plaintiff engaged in protected activity by reporting the discrimination, Yani Shafi, Wendy Sparks, Jim Bean, and Fred Kashow, Yani Shafi subjected Plaintiff to hostile remarks.

80. Jim Bean told Plaintiff that her employment would not be terminated during this meeting. Defendant, Yani Shafi responded to the information by standing up in anger and storming out of the room.

81. Yani Shafi spoke about forcing Plaintiff out of work.

82. Sometime in September 2023, Plaintiff requested intermittent FMLA due to her chronic anxiety.

83. Glen Zeitzer, who was in charge of assisting with FMLA requests, gave Plaintiff a blank FMLA certification form which Plaintiff provided to her treating physician.

84. Plaintiff submitted all required information regarding her medical condition and disability.

85. Sometime around October 3, 3023, Plaintiff received an email stating the request for leave under the FMLA was denied.

86. Plaintiff provided information about her disability and informed Defendants that she required intermittent leave so Plaintiff could respond to her medical condition in connection with unexpected flareups.

87. Plaintiff's request for intermittent medical leave was a request for a reasonable accommodation under the ADA, PHRA, and PFPO.

88. Defendants did not engage Plaintiff in an interactive process and denied the requests for accommodations.

89. Defendants refused to provide a valid reason for the denial.

90. Defendants denied Plaintiff's request for reasonable accommodation and FMLA leave because Defendants did not consider chronic anxiety a real medical condition.

91. Defendants stated that the reason Plaintiff asked for leave was not serious enough.

92. Defendants did not speak to Plaintiff or even attempt to hold a discussion about Plaintiff's medical condition.

93. Plaintiff tried to contact management several times to discuss the denial.

94. Defendants refused to take Plaintiff's calls and would not respond to her emails.

95. Plaintiff was scheduled to return to work on October 5, 2023.

96. Plaintiff did return to work as scheduled and upon arrival, Plaintiff was ordered to leave by Wykieth Monk.

97. Plaintiff was ordered to leave the property.

98. Plaintiff did as she was instructed and left. Plaintiff was not permitted to return to work.

99. Defendants terminated Plaintiff's employment because of Plaintiff's membership in protected activity and as a result of Plaintiff's protected activity.

100. The stated reason for Plaintiff's termination is pretext.

101. Plaintiff was terminated due to Plaintiff's race, disability and retaliation for repeated attempts to request reasonable accommodations.

102. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including physical injury and permanent psychological injuries.

103. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

104. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

105. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

106. Plaintiff has further experienced severe emotional and physical distress.

107. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

108. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

109. Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

110. Defendants discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

111. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

112. Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

113. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

114. Charing Party claims unlawful discharge and seeks reinstatement.

## COUNT I
## UNDER FEDERAL LAW
## S.C. SECTION 1981

115. Plaintiff, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

116. 42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

117. Plaintiff, as a member of the Black and/or African-American race, was

discriminated against by Defendants because of her race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

118.    Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

## COUNT II
## DISCRIMINATION UNDER TITLE VII
### (against corporate Defendants only)

119.    Plaintiff hereby incorporates all allegations contained in the preceding paragrpahs as fully as if they were set forth at length.

120.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

121.    SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

122.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her race, color, and gender.

## COUNT III
## RETALIATION UNDER TITLE VII

**(against corporate Defendants only)**

123. Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

124. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

125. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.

126. Defendants took action against Plaintiff due to Plaintiff's opposition to Defendants' discrimination and harassment of Plaintiff.

## COUNT IV
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

127. Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

128. Section 102 of the Americans with Disabilities Act ("ADA") states in relevant part as follows:

> a. (a) GENERAL RULE - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

128. Defendants made comments about Plaintiff's disability stating that Plaintiff did not have a disability and Defendants refused to provide Plaintiff with the legal protections that Plaintiff was entitled to under City, Commonwealth and Federal Statute.

129. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

130. Defendants unlawfully terminated Plaintiff's employment due to her membership in a protected class.

131. During such time, Defendant continually, intentionally, and in a discriminatory manner refused to acknowledge that Plaintiff had a disability and was entitled to legal protection.

132. At all times Plaintiff was able to fulfill the job requirements of her employment and work without restriction. Defendants manufactured discriminatory conditions to Plaintiff's employment that did not exists for any other employee.

133. Defendant's perception of Plaintiff's disability was entirely unfounded and unsubstantiated.

134. Defendants refused to engage Plaintiff in an interactive process to discuss reasonable accommodations requested.

135. Defendants' termination of Plaintiff was not based on any medical justification and was discriminatory as to Plaintiff.

136. Defendant terminated Plaintiff because of her disability.

137. Such adverse employment actions by Defendant were in violation of the ADA.

138. Following Defendant's termination of Plaintiff, Plaintiff was replaced by a non-disabled individual.

139. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

140. Plaintiff also claims unlawful retaliation under the ADA for her opposition to Defendant's unlawful employment practice.

141. Plaintiff makes claims for all damages available under the ADA.

## COUNT V
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

142. Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

143. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

144. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter IV, Section 12203, Discrimination [Section 102] states:

   a. "(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   b. (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

145. Defendants engaged in an unlawful discriminatory practice by retaliating against

Plaintiff due to Plaintiff's reports of discrimination and harassment in the workplace and due to Plaintiff's opposition to the unlawful practices of Defendants.

146.    As such, Plaintiff has been damaged as set forth herein.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**SETH D. CARSON, ESDQUIRE**
*Attorney for Plaintiff*

BY:    /s/ Seth Carson
          Seth D. Carson, Esq.
          1628 Packer Avenue
          Philadelphia, PA 19145
          Phone: 484.678.2210
          Email: Seth@CarsonLegalGroup.com

DATED: October 28, 2024